# GORDON *vs.* TITUS and others.

G. & Son, H. & B. and McK. entered into a contract, with each other, for the purchase of a quantity of malt, for $13,371.68. McK. paid his one-third; but neither of the other parties could pay for their shares, and G. proposed to use the note of H. & B. to raise the money for that purpose. They accordingly gave their note to G. for $8,864, and he got the note discounted, and with the proceeds paid for the malt.

*Held*, 1. That the note being used for the joint benefit of G. & H. and B., it became a liability to be borne jointly by them, in equal proportions.

2. That as this was not a matter relating to the affairs of the whole partnership, but simply to transactions between two of the partners, the rule that prevents one partner from suing another for matters connected with the firm, did not apply.

When the note for $8,864 was about to mature, H. & B. told G. they could not pay it, and wanted assistance, and thereupon G. agreed to advance them money on notes to be furnished. On receiving from H. & B. $8,000, in four notes, G. advanced them $6,000, and with this sum and $2,864 of their own money, H. & B. took up their first note.

*Held*, 1. That the effect of this arrangement was to terminate the transaction as to the first note which was advanced by H. & B. for the purpose of raising money; as they paid it from moneys raised upon the four notes subsequently provided.

2. That by this arrangement H. & B. paid their own portion of what was due for malt, from them, and also what was due from G. on the first note, for his share, and became indebted to the holders of the notes if they were discounted; but that as G. took them up when they became due, the notes were valid securities in his hands, for only the amount he had advanced thereon, viz., $4,457.06, leaving the sum of $1,593.06 as the only consideration which G. had in reality paid on the notes. That this balance was for his benefit—a part to pay his own indebtedness, and the balance of the notes used by him.

3. That on a settlement of the accounts between the parties, $1,593.06 was the amount due to G. from H. & B.; and that he had no further claim, beyond that sum and interest, on a settlement of their mutual claims, on the malt purchase. Such balance being the difference between what H. & B. paid on account of the first note, out of their own funds, and the amount they should have paid, originally, for their third of the malt.

4. That there was no difficulty in the way of settling the accounts between the parties, and adjusting the whole matter, in an action brought by G. against the makers, and H. & B., the indorsers, of one of the four notes transferred to G., to recover the amount. That it was not necessary that the value of the malt subsequently delivered to G. should be made the subject of a counter claim. LEARNED, J., dissented, on this point.

Gordon v. Titus.

APPEAL, by the defendants, from a judgment entered upon the report of a referee.

The action was brought against H. H. Titus & Co., the makers, and Hartshorne & Brand, the payees, of a promissory note for $2,103.05, made at Phelps, Ontario county, N. Y., November 6, 1870, payable three months after date. The cause was tried before a referee, who reported in favor of the plaintiff for the full amount of the note; whereupon judgment was entered against the defendants for $2,361.46, and the defendants appealed.

All the defendants compose the firm of Titus & Co.; the two latter defendants, the firm of Hartshorne & Brand. The defence is want of consideration, and that the note was given for the accommodation of the plaintiff.

The testimony shows that the plaintiffs Hartshorne & Brand, the payees of the note, and one Q. K. McKendrick, purchased 11,000 bushels of malt, on joint account, for the sum of $13,371.68. Mr. Kendrick paid for his third in cash, but Gordon and Hartshorne & Brand were without money to pay for their two-thirds, and undertook to raise it by borrowing. That Hartshorne & Brand made their note to raise the money, and Gordon got it discounted. That when it became due neither of the parties had the funds to pay it. Hartshorne & Brand then gave Gordon four other notes, which he got discounted, to pay the first one. This note is one of the four. Before it became due, to wit, about January 1, 1872, the parties divided the malt, and each took his share, one-third for each.

*Chas. N. Black*, for the appellants.

*A. A. Redfield*, for the respondent.

INGRAHAM, P. J. John Gordon & Son, Hartshorne & Brand, and one McKendrick, entered together into a contract for the purchase of malt, for $13,371.68. Mc-

Gordon *v.* Titus.

Kendrick paid his one-third. Neither Gordon & Son nor the defendants Hartshorne & Brand could pay for their shares, and Gordon proposed to use the note of Hartshorne & Brand to raise the money for that purpose. They accordingly gave their note to Gordon for $8,864, and he had the same discounted, and with the proceeds paid for the malt. The note being used for the joint benefit of both, it became a liability to be borne jointly by them, in equal proportions. As this was not a matter relating to the affairs of the whole partnership, but simply to transactions between two of the partners, the rule that prevents one partner from suing another for matters connected with the firm would not apply.

When the note for $8,864 was nearly due Hartshorne & Brand told the plaintiff they could not pay the note, and wanted assistance, and thereupon Gordon agreed to advance them money on notes they were to furnish. Accordingly, on receiving from them $8,000, in four notes, he advanced them $6,000, and they took up their first note when it came due. The effect of that arrangement was to terminate the transaction as to the first note which was advanced by them for the purpose of raising money, as they paid it from moneys raised upon the four notes subsequently provided.

What, then, was that transaction? Hartshorne & Brand, being in want of money to pay $4,457.06 which they owed for malt, and Gordon & Son being in the same condition, Hartshorne & Brand made four notes which they placed with Gordon, who advanced $6,000 thereon. This money, with $2,864 of their own funds, they used to pay the first note. By this arrangement they paid their own portion of what was due for malt from them, and also what was due from Gordon on the first note, for his share, and became indebted to the holders of the notes if they were discounted; but as the plaintiff took them up when they became due, they were valid securities in the hands of Gordon for only the

amount he had advanced thereon, viz., $4,457.06, leaving the sum of $1,593.06, as the only amount of consideration which Gordon in reality had paid on the notes. The balance was for his benefit—part to pay his own indebtedness and the balance of the notes used by him, as he said, to keep up deposits in the bank, so as to obtain discounts.

It is apparent, from this statement, that on a settlement of the accounts between the parties $1,593.06 is the only sum due the plaintiff from the defendants ; and that he has no further claim beyond that sum and interest, on a settlement of their mutual claims, on the malt purchase. This balance is the difference between what the defendants paid on account of the first note, out of their own funds, and the amount they should have paid originally, for their third of the malt.

I see no difficulty in the way of settling the accounts between the parties, in this action, unless such difficulty arises out of the pleadings. The plaintiff suggests that the value of the malt subsequently delivered should have been the subject of a counter claim. This is not so. It always belonged to the plaintiff, and was held by the defendants on storage. There was nothing to counter claim. The delivery of it to the plaintiff dispelled any presumption that the notes were an advance on that property. The balance above stated, with interest on the same from the day of payment for the malt by Gordon, is all the consideration for which the plaintiff could claim to hold the four notes of which this note in suit was one.

It would seem to be an idle proceeding to allow the plaintiff to recover more than was due him on the account between the parties, and put the defendants to another action to recover back the amount which they would have overpaid. The whole matter can be adjusted in this action.

The judgment should be reversed, and a new trial

Gordon v. Titus.

ordered, costs to abide the event; unless the plaintiff consents to reduce the judgment to $1,593.06 and interest from 17th September, 1870; in which case the judgment is affirmed for that sum, without costs of appeal.

BRADY, J. I concur with Justice Ingraham in the conclusions at which he has arrived. It is, in my judgment, an important element in their favor that the plaintiff received on the defendants' order one third of the malt, in quantity, and for aught that appears, in quality also. The delivery of it to him was the result of a proposition from the defendants Hartshorne & Brand to break up the joint account and accept the share, to which the plaintiff acceded, accepting the malt delivered, without objection. This statement of the arrangement was not denied or controverted by the plaintiff; and that fact having been established, the judgment should not be maintained. The evidence relating to it was not objected to, and it became the duty of the referee and of this court on appeal, to consider the case with reference to such testimony. If the fact proved had the effect of opening a subject not necessarily embraced in the issues presented by the pleadings, the plaintiff should have met it. If he could by responsive proof show outstanding equities in relation to the joint transaction, he would have been awarded the benefit resulting from the proof, in whatever form that benefit should be extended. As the courts of the state are now constituted, they apply legal and equitable rules and maxims indiscriminately in every case (*Dobson* v. *Pearce*, 2 *Kern.* 156; *N. Y. Cent. Ins. Co.* v. *National Protection Ins. Co.*, 14 *N. Y.* 90;) and it would not be equitable to permit the plaintiff to recover against the defendants Hartshorne & Brand for any greater sum than by the proofs they are shown to be indebted.

LEARNED, J. (after stating the facts.)   An action was brought on another of these four notes in the Common Pleas, and that action and the present were tried together before the same referee.   His report in both actions was in favor of the plaintiff.   On appeal to the General Term of the Common Pleas the judgment was affirmed.   (*See MS. opinion, Gordon* v. *Boppe.*)

The precise points involved in this case appear, therefore, to have been decided between these parties in another court of this state.   That decision, if not absolutely binding upon us, should, as I think, have great weight, not merely as an authority upon the legal principles passed upon, but as an adjudication between substantially the same parties, on substantially the same litigation.   Unless, then, it is very clearly our duty to disagree with that decision, I think it should be followed.

It seems to me that the defendants have some rights and equities growing out of this malt transaction which we cannot settle in this suit.   We are not in full possession of the facts.   Some sales appear to have been made by the defendants; to what extent does not appear.   What they thus received we do not know.   There is some disagreement as to the question whether the defendants finally delivered to the plaintiff his share of the same malt which had been purchased on joint account.   Nor do we know whether the defendants performed the duty of selling the malt faithfully.

These considerations make it difficult, if not impossible, to adjust the rights of the defendants by way of counter claim or defence to this note.   It is true that on this joint purchase, where each was to pay one-third, or about $4,457.07, the plaintiff appears to have practically paid $6,000 and the defendants $2,864.   And the appellants claim that on a settlement they would owe the plaintiff only $1,593.06.

But no defence is set up in the answer under which the rights of the parties under a final settlement could

Gordon *v.* Titus.

be shown. These are matters of affirmative defence by way of counter claim, or payment, or the like. No application for leave to amend the pleadings appears to have been made. And it is a matter of importance, if the settlement of the joint purchase is to be a defence, that it should be pleaded. If that is brought into this controversy the record should show the fact, that the matter may be final.

Under the pleadings, then, in this action, I think that the judgment must be affirmed. For it does not seem to me that the evidence proves that the note was an accommodation note, or that it was without consideration. And while in the furtherance of justice I should desire not to be technical in a matter of pleading; yet I do not think we can do real justice to the parties by bringing into this controversy the matters of the joint purchase, as they imperfectly appear on the evidence.

I think the judgment should be affirmed, with costs.

Judgment reversed, and a new trial ordered, costs to abide the event; unless the plaintiff consents to reduce the judgment to $1,593.06 and interest from 17th September, in which case the judgment to be affirmed for that sum, without costs of appeal.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January, 1873. *Ingraham, Brady* and *Learned,* Justices.]